Okay, the next case on the argument calendar is Rodney Woodland v. Al Montero, one bar. Montero, one bar of Hill, and so... In this case, it's 15 minutes per side, and appellant can commence. Your Honors, and may it please the Court, my name is Andrew Grimm, representing Plaintiff Appellant Rodney Woodland in this copyright infringement dispute. I respectfully request leave for two minutes for rebuttal, Your Honors. Thank you, Your Honor. The fundamental fact here and what's central to this case is the serial copying, that the defendant here copied over 10 photographs made by Plaintiff Appellant Rodney Woodland, and that serial copying which gets short shrift in the answering brief is a fundamental fact here because it first distinguishes this case from a number of the authorities that are cited by the other side, and second, it has massive significance to both the copying doctrine and the similarity doctrine. And I can address those in either order if Your Honors would like me to. So looking at the copying doctrine, this doctrine is fundamentally a factual doctrine, and it asks if we think that the similarities found in the works that issue in the case are coincidental or rather are the result of copying by the defendant of the plaintiff's works. And the serial copying at issue here is a strong point against the coincidences here. I would note, first of all, that Mr. Woodland did assert facts of copying at paragraphs 11 and 12 of the operative complaint at ER 129, as well as ER 136, paragraph 16 and 17. He's noting that defendant, in fact, went on his Instagram, which was available, copied it, and then did so. So I believe that is sufficient. Well, I'm sorry. Let me just stop you there, counsel. Is there any evidence in this case other than a conclusory statement that the defendant went on the plaintiff's Instagram? Well, Your Honor, I would note that the legal conclusion would just be the fact of copying itself. So addition of Instagram... But I mean, my understanding, correct me if I'm wrong, is that your factual proposition for accessing your client's photographs was that both your client and the defendant had an Instagram account. Is there more factually? I mean, putting aside the issue of similarity and the canard about somebody inventing ode to a Grecian urn on their own, but putting all that aside, is there any evidence that you proffered as to access other than both parties had an Instagram account? Yes, Your Honor. So I'd first note that we're on a 12B6 stage. So the operative complaint is binding on the case. The second thing I would note is trial counsel did allege that the defendant not just is on Instagram in some general way, but that he specifically went to the Instagram of the plaintiff. So that is distinct from just saying that they're both on Instagram. And I would also note, Your Honors, that one of the major errors that the district court made is conflating Instagram with just being online generally, because there's a fundamental difference when you open a web browser and nothing is presented to you necessarily directly until you go to a search engine and start typing and requesting it. But that's fundamentally different than being on a platform that has a highly complex algorithm that is trying to direct information that may be of interest specifically to you that's individualized and personalized to you. So the district court made the fundamental factual error of conflating a social media platform that is trying to deliver you information, whether or not you ask for it, from latent information on the web. And that's about as basic a technological and factual error as you can get. But suppose, Your Honor, you think that Twombly Iqbal requires more than that. I would note what someone going on someone's Instagram is not a legal conclusion in the Twombly Iqbal style. That's a factual assertion. So that alone, I think, suffices on copying, because there's nothing the Supreme Court says in Twombly Iqbal or in this court's authority on pleading that you need to go further unless you're talking about inferences of malintent and the Iqbal decision. But, Your Honor, I think there are a lot of additional facts, because we're asking ourselves fundamentally, do we think this is just mere coincidence? And so you have to sit. Do I think that 10 photos that have similar elements, over 10 photos that have similar elements, that the best they can find for some other work that is similar is age-old photographs of a woman lying down. That's the closest they get. So there's the probativeness of the similarities, but essentially the serial copying. They want to treat each photo in isolation, but a fact finder wouldn't do that. They'd recognize that all of these need to be considered together. As the leading treatises do as well. And they point out, if there's serial copying, the idea that you can't reasonably infer, in my client's favor, that these aren't a coincidence. Because that's really what you're asking yourself as this court's doctor has pointed out. Do we think these similarities that showed up are a coincidence? The other thing we'd be asking ourselves is the rarity. Counsel, sorry to interrupt. Judge Gould, I'm having on my screen, counsel's presentation is breaking up. And I'm just wondering, is that me? Or are other people seeing that as well? My presentation was not breaking up. A little bit of my end, but not too bad. Okay, I'll, Judge Gould, I'll let you know if it interferes with my ability to hear and understand counsel. Yeah, if you want us to pause for technical reasons, you can just tell the clerk to do that. I will. Not at this point. Thank you, Judge Gould. You're welcome. So, Judge Bennett, I think the central thing here that's being left out by the district court is looking at the 10 photos in their totality, that there are over 10 photos. And so, if there's one photo, you might think about them differently if there's one by one. And that's how the district court thought about them. But there's all 10 of them together. In addition, we'd be looking at the rarity of the photograph. So, if I have a photo with my family in front of the Statue of Liberty, let's say, that rarity of the photo is going to affect the factual inference. So, I think the key thing to remember is the inferences we're making in favor of the plaintiffs that are required for this posture have to be done based upon the specifics of the facts. Before you, one of them is the serial copying, that there are over 10 that show up. I'd also note the timeline that they show up. In pages 64 to 66 of their brief, they focus on the plaintiff's timeline of creation. But it's rather that the defendant created them and released them in batches, which further, the defendant's release of them in batches supports the idea that these were not coincidental copying. So, and then we have the fact, if you look at, if I may interrupt, but if you look at all the photos individually, a lot of them, similarities are really, really aren't there, many of them. Others are tropes or things that are quite, you know, common. So, for example, you know, photos four, five, and six, you know, they're an African-American man in chain. That is, that's not something that's unique, you know, given our history. We've seen plenty of artworks. I don't know how much weight you can put that. And similarly, with a lot of these other photos, you know, photo number two, I'm looking at, you know, whatever you want to call this, like a beefcake pose. You know, you can go on the internet and see Burt Reynolds or David Hasselhoff in similar positions. A lot of these, even if you look at individually, you can discount them. And ultimately, you end up with very few. So, I'm not sure if I'm convinced that, you know, just because you have 10 or 12 photos lined up, that's enough. Well, Judge Lee, I would point out that's where the serial copying becomes really important. Because if I chose, so, what the Supreme Court has pointed out in its FICE decision, that's the fundamentals of copyright, is selection and coordination is really important to copyright as well. So, even if you think that I choose, if I make a list of 10 photos that you don't think are copyrightable, or you don't think they're protectable elements in some way, and someone else copies that same 10 photographs in that way, the selection of the 10 itself is also protectable. And so, it's that selection and coordination that makes the serial copying fundamentally different. So, for example, if I made a list of my 200 favorite restaurants in Los Angeles, and someone else copied that, obviously, I don't have the copyright in the name of the restaurant. But the list of the 200 put together, the serial nature of what I made, by selection and arrangement, is protectable expression. And that's what the district court's overlooking, is yes, there are articulable similarities. I would distinguish Rentmeester, Your Honor, because the issue in Rentmeester is the pose there was a standard ballet pose. So, we're not asking if the pose has ever been created before. It doesn't have to be unique. It merely has to be original to that person. So, in Rentmeester, the issue is it's a standard ballet pose called a grand jeté. And the only other articulable similarity is that it's Michael Jordan. So, even if you think others have done this, that's the distinction between uniqueness or novelty, which means no one has ever done it before, and originality, which, as the Supreme Court expressly defines, means not copied, and you made an artistic decision to include that. So, my client indisputably made decisions to put the chains, to arrange them in this way, to arrange the poses, to arrange the lighting angles, and then the defendant did so in a way that is sufficiently similar and stole not just one, but all 10 of them. And so— Quickly, I think you touched upon this. Can you address the access? I'm trying to understand. How have you shown access here? Well, so access— So, remember, access is a factual question. It's fundamentally, did this person copy it? And this court has said again and again, direct evidence of access is rarely found, because, especially in a prediscovery phase, because the defendant isn't just going to admit it, right? They're not just going to come out and say it. And there's no way to get them necessarily to admit it in a prediscovery phase. So, what is the basis for evidence? You look to the work— You examine the works themselves, the circumstances and methods and mediums through which they're trying to access them. So, it's a multifaceted factual thing. Yes, we— So, we— First of all, we do allege that they accessed it through Instagram, where they were indisputably available to anyone and any member of the public. But what's distinguishable about Instagram is Instagram serving it to them— It's serving it to them with algorithms and bringing it to its attention as a media platform. So, there's the actual— the fact that it's on Instagram. The district court just conflated that with being on the internet or the World Wide Web generally. The second one is the serial copying. If I have a picture— If you take 20 photos in front of 20 landmarks, and let's say I match one of them, your inference that I copied you is not going to be strong, because a lot of people take pictures in front of the Statue of Liberty, you might say. But now, if I match you on exactly those 20 landmarks that you take in front of, your inference is going to be a little stronger. And remember, these aren't landmarks. And the poses— The poses are unique. He's putting himself in strange positions that are idiosyncratic. And although they'll say— They'll— You know, they'll— They don't have any evidence or any indicia to the contrary. The best they put in their brief is actually not the same pose. It's a different pose. So they can't find— And they've never found anything to suggest to the contrary that this is not a completely unique pose. So, sure, some of— The idea they've used change. He arranged— My client arranged the chains around himself in a way that he thought was unique. And we haven't found anything to suggest that it wasn't. So, sure, it's not the broad idea of a chain, although that's a sufficient articulable similarity under the objective test. Because, remember, we're just asking if there's articulable similarities. We leave the idea whether it's substantially similar to the fact finder. And that's the law of the circuit. So— Cancel. So do I take what you just said is that you are not arguing that the photos, to use a term that Professor Zimmer uses— Professor Nimmer uses in the case law, you are not arguing that the photos on their face are quote-unquote strikingly similar? I think they're probatively similar, Your Honor. The similarities, especially when you get across all 10 of them, are such that a fact finder— Because, again, it's a fundamentally factual question. Do we think Mr. Hill made these without himself or someone in his entourage looking at Mr. Woodland's photography? That's the question we're asking. Do you want me to finish answering your question, Your Honor? Judge Gould, may counsel finish answering my question? Yes. Counsel should. Thank you, Your Honor. So, Judge Bennett, so that's fundamentally the question you're asking. Do you think it's coincidental? And so one of the ways you can show it's not coincidental is, let's say it's a Taylor Swift song and it's blasted all over, all over, let's say, every streaming service, etc. Another way you can say it's not coincidental is that there would have been a way for them to access it without hacking into computers or something like that. And here that's undisputed. It was available on Instagram. And then you start to ask yourself, well, what would be the reasonable inferences in favor of the plaintiff that you might make here? And the big one here is there's 10 works and they all share these similarities. And then when you aggregate it across the 10, the question you ask yourself is, okay, would that be, is that something I think is pure coincidence? Is that independent creation, to use doctrinal terms? Counsel, you're well over. At the time, let me ask this. Have you concluded your response to Judge Bennett? Yes, Your Honor. So I also have a different question. I know we're going over time, but we'll work that out with the appellee. My question is this. When we deal with copyright infringement of text, there's a doctrine involving what I think are called scenes of fear, like certain scenes that are typical throughout literature. And to copy those elements, they're not protected. But with visual images like photos, as in your case here, is there a similar doctrine? Your Honor, I think that my understanding of the scenes of fear doctrine is that it can be applied or asserted as against any work. So I'm not familiar, I'm not aware of limitation. The reason, it's an affirmative defense. So they would need to show, it would be the burden of the defendant to show that these are standard types of works. And that isn't shown here. In the Rentmeester case, the plaintiff is admitting that the pose is a standard ballet pose. We don't admit that. My client's doing unique works. He's never seen anything like it. And I can't find anything that uses those poses. So that's an affirmative defense. They didn't assert it below. So I would say it's waived, Your Honor, but moreover, or at least forfeited for appeal purposes. But moreover, there's nothing in this record that would show that these are standard poses or that this is a standard use of lighting, especially not across all 10 of the works. That these are a standard selection of poses and a standard selection of lighting is applied to them. Okay, thank you, counsel. That indeed answered my question. I guess we should hear from Appellee. So, counsel, your time was used up. But even though we're short on time, we'll give you one minute of rebuttal argument. Thank you, Your Honor. And if you can plan for that. Okay, so now we'll hear from Appellee. Thank you, Your Honor. My name is Peter Anderson. I'm here on behalf of the Court of Appeals. I'm here on behalf of Mr. Hill. And we urge the court to affirm the judgment on two independent and separate and distinct reasons. The first one that I'll deal with, unless you'd like me to proceed differently, is access. They have to allege, plausibly allege, that copying occurred. Counsel has referred to an allegation he characterized as a specific allegation that Mr. Hill saw plaintiff's photographs on Instagram he cites to excerpt of record, page 129, the actual sentences on information and belief defendant viewed plaintiff's work. That's it. Now, that's clearly a conclusion. It's clearly unsupported by any factual content. And both Trombley and Iqbal require that. This is the second minute of the complaint that's in the excerpt of records that I just quoted from. That was the third attempt that plaintiff made to try and plead a claim. In paragraph 13, he goes on to add the two other elements that counsel is referring to. One, this supposedly remarkable timing of the photographs coming out. He actually, with all respect, my friend, this characterizes what we've said and pointed out at the brief. From the initial complaint, through the first amended and second amended complaint, plaintiff specifically alleged the time difference between his posting of his photographs and the defendant's posting of allegedly infringing photographs. Although in the opening brief, counsel refers to that as, let's see, remarkable timing of one after another in rapid succession over the course of a few days. It's actually anywhere from a month to two and a half years. I also would point out, counsel refers to 10 words. If you add them up, they're asserting allegations as to eight of Mr. Hill's photographs. And so let me ask you an access question. Assume hypothetically that I were to agree with you vis-a-vis the plaintiff's allegations of access. If plaintiff, do you agree with me that if plaintiff can demonstrate quote, unquote, striking similarity, then plaintiff doesn't have to show any evidence of access to move past the phase we're at? That's absolutely true. Of course, counsel has admitted they don't claim striking similarity. And in fact, in the first and second and third complaint, they refer to substantial similarity. We also pointed out Malibu textiles, which is I think the only example of a finding of striking similarity at the 12B6 level. And we have depicted that in our brief. We've copied and pasted the images and you'll see that the fabric designs are identical. The questions, excuse me, the colors are a little bit different, and the image appears at Malibu textiles, 922F3D at 956. So counsel, assuming I'm using the same numbering that everyone else is, which I hope I am, explain to me why vis-a-vis photo 12, why there isn't, and I understand that they may not be arguing striking similarity and that's a different issue. But for my question, why aren't the photos in photo pair 12 strikingly similar? I'm referring to the supine, the image of a black man on his back, which is-  Although there's more than one of those. So I think I'm looking at the last one where the copyrighted photograph is the supine pose on something covered in like a white sheet. Right. I'm happy to adjust that one, Your Honor. Counsel said that in Rentmeester, there was a standard pose. And actually in Rentmeester, this court said that poses are not protectable. So even if we assume this is an identical pose, the pose itself is not protectable. What Rentmeester teaches us, and it's consistent with the Omdang decision in Skidmore, but what Rentmeester teaches us specifically with respect to photographs is poses are not protectable. They are considered and analyzed as one unprotectable element in a selection and arrangement. So what plaintiff would have to show, and he can't because of these photographs, is that that unprotected pose of a supine person, which frankly, I keep thinking of Dirty Dancing when he holds her up. But when you have that unprotected pose, the question then is, okay, let's assume that's substantially similar. But it's unprotected. So to plead substantial similarity in protected expression, there has to be a selection and arrangement. We have to look at the other things. The background, which is remarkably different. The two shots the plaintiff has of himself, one he's on a stool in a room, one he's in another room with, I guess, something draped over the stool. In Mr. Hill's photograph, there is that supine pose. There are differences in how the legs are positioned, which I want to get back to in a second. But this cannot be a selection and arrangement claim because all the other elements are different, which is a fact that goes through all of his photographs. Now, if we go to Rentmeester, the Ninth Circuit at a 12B6 level went through and compared what frankly seemed like relatively small differences in Michael Jordan's arms and position of his hands in the photograph that the plaintiff had done and in the Nike photograph. Those differences are aligned with the kinds of differences we see in this pose. So, first of all, Rentmeester is on point and mandates of affirmance because in Rentmeester, the court specifically said Mr. Rentmeester had come up with a unique and unusual pose in a context for a photograph of Michael Jackson, excuse me, Michael Jordan. Poses, however, again, are unprotectable. And if we look at the poses, and I'd like to do it all, but to me, it's just too tedious. If we go to page 28 of the opening brief, excuse me, the answering brief, the red brief, you'll see that the only similarity in pose is a black man with his hands towards his chest. That's it. There's nothing unique about that. There's nothing unique at page 30 of the answering brief. Of a reclining gentleman, recumbent, basically. And you'll see that all the other elements of the pose, which itself is unprotectable, are completely different. Same thing with the third set of photographs at page 32. There's absolutely no similarity. There's blue. That's about it. If we go to the chains, they're completely different. The background's different. The pose is just a standing man. If you go to page 36, the sixth and seventh sets of photographs, it's just a man viewed from below. The poses, again, are different. And the background is different. If we go to page 39, it's a standing man with outstretched arms. There's nothing unique about that. And more importantly, since poses aren't protectable, it's a selection and arrangement question of are the backgrounds and other unprotected elements standing alone? Do they form an original work? And they clearly don't. If these did, then Rentmeester would. Because Rentmeester is a much, much, much closer case than this one. The only similarity here is a black man without clothes, sometimes with chains, but posed differently with a completely different background and other elements. Now, council has repeatedly referred to the mere fact that they claim, he said, 10 infringements. However, what he's ignoring is that in the complaint, the second amended complaint and the earlier complaints, they specifically allege that Mr. Hill is a active user of Instagram. He posts repeatedly. That's what they say. And the period they're covering is three years. So what we know from their own complaint is they're alleging that out of all the photographs and other images that Mr. Hill posted on Instagram as an active user of Instagram, they can only find eight. Now, there's a little bit of bootstrapping going on here because he assumes they're infringing to then argue, oh my god, he must have copied because there's eight or 10 ones that are similar. That's just your bootstrapping. The fact of the matter is these are generic images. The similarities or alleged similarities are unprotected and there is no ground to assume, which there's nothing pleaded that establishes that defendant had a reasonable opportunity to copy the plaintiff's photograph. If we can go to the access question, should we remand to get more discovery on how this Instagram algorithm works? Because I guess his claim is if you have similar images, if they've seen similar things, similar images may pop up on one Instagram user's feed. No, Your Honor, for two reasons. First of all, Twombly teaches that you don't get discovery if you can't plead a plausible claim. Well, I guess his theory is they look at similar things and therefore his images would have popped up. Well, and the second answer- Seems plausible. I mean, I don't know if it's true or not, but it seems plausible. Well, when we consider that they've alleged and they admit that there are billions of photographs on Instagram in this time period and billions of users, there only are, and they basically concede access doesn't survive in that environment. A reasonable possibility of seeing a particular person's photographs does not make any sense. It's not reasonable. They instead refer to Instagram informational things that they didn't ask the court to take judicial notice of, but they throw in and they say that the factors for connecting different users of Instagram include the images. However, we showed at page 68 of the answering brief, images are not considered. What is considered is who likes you. So if someone has liked you- Do we know that? Well, you know it as much as the point that they raised because they didn't ask for judicial notice. But if you actually look at the things they're asking us to look at, the Instagram recommendations on Instagram, what creators need to know, Instagram for creators, that's at page 68, shedding more light on how Instagram works. These are all things that were triggered by their argument that Instagram joins people together if they have similar images. That's just untrue. If you look at Instagram and you look at what they're citing the court to, images are noticeably absent from the criteria that trigger Instagram to join someone else. Do we know? Isn't that one of the disputes over TikTok and ByteDance? They have a proprietary algorithm. No one knows exactly how that's done. And I know maybe Meta says something, but I don't know how much stock we would put at whatever Meta says out there in the public. Well, it is what Instagram says. And they're relying on what Instagram says to misstate that Instagram says they review images and put people together who have similar images or interests in images. Even if that were true, which it's not, we've shown that at page 68 of our answering brief, you're still talking about billions of people. And if we start comparing that to Art Attacks or Rice versus, I think it was one of the broadcasting stations, both published decision, people, we go back a bit, the Fonda case, Ninth Circuit, I think it was 1980s. That was 2,000 books in Los Angeles, not enough for access. Art Attacks was, I think, 17,000 of these devices sold, not enough for access. To say that, well, we've got billions, literally billions of photographs. And it's reasonable to say that, well, maybe Mr. Hill saw theirs. It just, it's inconsistent with all of this court's published cases on access. Also, I should mention, even if he had plausibly alleged access, then we're in Rentmeister. In Rentmeister, the court found access, concluded that there were substantial similarities probative of access, but affirmed the 12b6 dismissal because those claims similarities were unprotected elements, because you can't protect poses. And there were far fewer differences in that case than this one. In this case, you've got these fantastical images in Mr. Hill's artwork. In Rentmeister, the basketball hoop was a little bit different. The skyline was different. The foreground was a bit different. That was a much harder case than 12b6 and it's a published decision. This case doesn't even come close to Rentmeister. There's just a couple of things. Oh, one of the things that the counsel referred to was he said that the courts have recognized if there is a serial infringements, that supports a theory of copying. The only case that they cite to is a district court case against Conan, the comedian. And there, and I'll get you the name in a second, Caseburg versus Conoco, which we discussed at pages 63 and 66 of our brief. There, the plaintiff was contacted or contacted himself, Conoco's writers, excuse me, Mr. Conan's writers. And that day or the next day, there was a, and he told him a joke. The plaintiff told the writers a joke. That day or the next day, that joke was used on television. And that happened over and over again. We're talking about the same day or the next day. And the district court said, yeah, that's probably indicates copying, but found that there wasn't protection. Counsel, counsel, sorry to interrupt, but your time is up, so. Well, thank you, Your Honor. I don't want to cut you off at mid-sentence, but please try to conclude your argument. Thank you, Your Honor. We believe that despite three attempts, plaintiff has not pled access and has not pled, and has pled himself out of court by putting the photographs in issue. And we respectfully ask that the court affirm the judgment. And thank you, counsel. Thank you. Your Honor, I would first note that my friend stated the wrong standard for copyrightability and similarity. He said that my client's works had to be unique. That's just not the law. Feist says originality, which merely means that they don't have to be copied. Second, my friend also said that he called the works here generic, but there's nothing here that supports that. That's just his attorney insistence. And if they truly were generic, that can easily be addressed through the affirmative defense of Sands Affair on remand. But that defense wasn't raised. Third, yes, I think a further remand to the extent that it wasn't requested, we do request judicial notice of the Instagram's own description of how it works. And I think that's clear. But I also think the Instagram issue points out something also clear, which is that a simple subpoena to Instagram to see who actually viewed Mr. Woodland's site would help, would essentially resolve the issue if that had been afforded. And that would actually go a long way towards resolving the dispute. Finally, my friend misspeaks on a premise. Mr. Spratt, I would note the clue. It's because the pose is not original. The pose is a standard ballet pose. There was no originality, for example, to using a word out of the dictionary by itself. And in addition, any other similarities were that it's the same person. It's Michael Jordan. But of course, this court rightfully in Rentmaster recognized that you can't give the photographer control over the ability to ever take pictures of you in a particular pose again. So Rentmaster itself expressly limited itself in the footnotes as described in the opening brief. So for all of those reasons, we think that my opposing counsel's incorrect. And this court should at least vacate and remand. Thank you. Thank you, counsel. This case shall be submitted.
judges: GOULD, BENNETT, LEE